The PARKE STATE BANK,
Appellant–Defendant,

v.

Ardith L. AKERS, Appellee–Plaintiff.

No. 31A05–9312–CV–473.

Court of Appeals of Indiana,
Fifth District.

Jan. 18, 1995.

Norman L. Lowery, Wright, Shagley & Lowery, Terre Haute, for appellant.

Terry E. Harris, Young, Harris & Harvey, Crawfordsville, for appellee.

## OPINION

RUCKER, Judge.

In violation of a written contract a bank allowed access to a jointly held safety deposit box from which jointly owned certificates of deposit were removed; the bank then redeemed the certificates over the endorsed signature of only one joint owner. Is the bank liable to the co-owner? We think not and therefore reverse.

Harold M. Akers and Plaintiff–Appellee Ardith L. Akers were married on October 4, 1986. About a month thereafter Harold instructed Defendant–Appellant Parke State Bank (the Bank) to place Ardith's name on several certificates of deposit (CDs) which had been previously held in the names of Harold and his daughter, Deborah Hopkins. The Bank complied and the CDs were issued to "Harold Akers or Ardith Akers or Survivor." On the same day Harold and Ardith leased from the Bank a safety deposit box in which the CDs were placed. The lease agreement provided in pertinent part:

> Unless otherwise agreed in writing, a Safe leased by two or more persons shall be held by them jointly and severally, and either of them, or their du[l]y appointed deputy, without consent of any other of them, is entitled to separate access to the Safe. . . .
>
> \* \* \* \* \* \*
>
> A deputy may be appointed in writing . . . but no renter may appoint a deputy without the consent of the other renter(s), if any.

*Record* at 182.

In August 1991, Harold was a patient at the Vermillion County Hospital having been diagnosed with cancer. While present at the hospital Harold telephoned the Bank president and advised him that he wanted his daughter, Deborah Hopkins, to have access to the safety deposit box. The Bank president informed Harold that Harold would have to provide written authorization. Harold then drafted a note giving Deborah the

necessary authority. Ardith was not aware of the note nor did she consent to Deborah gaining access to the safety deposit box. Thereafter, Deborah presented the note to the Bank which allowed her access to the box. At Harold's direction, Deborah retrieved therefrom four CDs totaling $35,000.00. Each CD was issued by the Bank to "Harold Akers and Ardith Akers or Survivor." Without the knowledge or consent of Ardith, Harold endorsed the CDs, instructed Deborah to cash them, and to then redistribute the proceeds to Deborah and two of Harold's grandchildren. Deborah complied and presented the CDs to the Bank. The Bank in turn redeemed them and issued three cashier's checks: $12,000.00 to Bradley Hopkins or Deborah Hopkins; $12,000.00 to Rebecca Bennett; and $11,064.18 to Deborah Hopkins.

Harold died a few weeks later on September 2, 1991. Sometime thereafter Ardith discovered the foregoing transactions and filed suit against the Bank. Ardith alleged breach of the safety deposit box rental agreement by reason of the Bank permitting Deborah to gain access to the box without Ardith's consent. She also alleged negligence in permitting Deborah to negotiate payment of the CDs and issuing redemption checks to persons other than the joint owners. The case proceeded to trial before the bench. On motion by Ardith the trial court entered special findings and its conclusions thereon and entered judgment in Ardith's favor. This appeal ensued in due course.

■■■ Upon review of a judgment supported by special findings and conclusions this court applies a two-tiered standard: we first determine whether the evidence supports the findings and we then determine whether the findings support the judgment. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, *trans. denied.* Special findings and the judgment flowing therefrom will be set aside only if they are clearly erroneous. *Id.* Findings are clearly erroneous if the record lacks any facts or reasonable inferences to support them. *De-Haan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, *trans. denied.* A judgment is clearly erroneous when unsupported by the

findings of fact and conclusions thereon. *Id.* In making our determination we neither reweigh evidence nor judge witness credibility. *Id.*

■■■ There is no question that the Bank breached the terms of its safety deposit box rental agreement. The box was jointly owned by Harold and Ardith and by express terms of the agreement could only be accessed by Harold or Ardith or by a deputy appointed by the consent of both parties. Clearly Ardith gave no such consent. However, a party injured by a breach of contract is only entitled to receive such damages as may reasonably be considered to have arisen naturally from the breach. *Orto v. Jackson* (1980), Ind.App., 413 N.E.2d 273. The record is clear that although other valuables were present in the safety deposit box, the only items removed therefrom were certificates of deposit jointly owned by Harold and Ardith. Thus, any pecuniary loss here necessarily depends on the Bank's liability in redeeming the certificates and issuing checks payable to persons other than the joint owners.

■ In support of its contention that the trial court erred in entering judgment in Ardith's favor, the Bank relies heavily on Ind.Code § 32-4-1.5-3(a) which essentially provides that during the lifetime of the parties, a joint account belongs to the parties in proportion to the net contribution that each has made to the sums on deposit, unless there is clear and convincing evidence of a different intent. According to the Bank, Harold provided the source of the funds for the certificates of deposit, and he did not intend to make an inter vivos gift to Ardith. Thus, concludes the Bank, Harold had the authority to redeem the CDs. While we agree with the Bank's conclusion, the Bank's reliance on I.C. § 32-4-1.5-3 is misplaced. It is true the foregoing statute describes ownership of an account while the original parties are alive. *Shourek v. Stirling* (1993), Ind., 621 N.E.2d 1107. However, the statute is limited to resolving ownership issues between the surviving parties and the estate of the deceased. *Matter of Estate of Goins* (1993), Ind.App., 615 N.E.2d 897, *trans. denied; see also* I.C. § 32-4-1.5-2 (statute has no bearing on the

power of withdrawal as determined by the terms of account contracts). This is not an action involving the estate of Harold Akers. Rather, it involves a surviving party and a third party. Thus, we must rely on other provisions of the Nonprobate Code Transfer Statutes in resolving the issue before us.

 Under Ind.Code § 32–4–1.5–1 a "party" is one who, subject to request and by the terms of the account, has a present right to payment from a multiple-party account. A "multiple-party account" includes a "joint account" which in turn includes certificates of deposit. *Id.* The observations of the Indiana Probate Code Study Commission concerning multiple-party accounts are instructive:

> It is well and widely known, for instance, that a passbook issued to evidence a savings account is all that is required to effect a withdrawal. If one of multiple owners presents the book and requests withdrawal, nothing more is needed, even as one co-owner may draw on a checking account without the other owners joining.... Even though a certificate of deposit may look like a stock certificate, the passbook theory, nevertheless, applie[s]. One of multiple owners in possession of a certificate may effect its transfer or liquidation without the joinder of the other owners.

West's Ann.Ind.Code, Commentary § 7 at 450 (1979). There is no question here that Harold was a party to a joint account. As such he had the authority to withdraw funds from the account without the knowledge or consent of Ardith.[1] Ardith does not dispute Harold's authority to redeem the jointly held CDs. Rather, she contends that Harold could not have personally cashed them because he was ill and confined to a hospital. However, there has been no challenge to Harold's mental capacity and his physical incapacity is not controlling. Clearly, Deborah acted as Harold's agent. And the law is well settled that an agent acts for his princi-

pal in the same manner as though the principal himself had acted. *Silverstein v. Central Furniture Co.* (1959), 131 Ind.App. 170, 162 N.E.2d 690, *reh'g denied.*

 What, then, of the Bank's liability in this matter? Indiana Code § 32–4–1.5–8 provides in pertinent part:

> Any multiple-party account may be paid, on request, to any one or more of the parties. A financial institution shall not be required to inquire as to the source of funds received for deposit to a multiple-party account, or to inquire as to the proposed application of any sum withdrawn from an account, for purposes of establishing net contributions.

Ind.Code § 32–4–1.5–9 provides in part:

> Any sums in a joint account may be paid, on request, to any party without regard to whether any other party is incapacitated or deceased at the time the payment is demanded.

Ind.Code § 32–4–1.5–12 provides in part:

> Payment made pursuant to [the foregoing statutes] discharges the financial institution from all claims for amounts so paid whether or not the payment is consistent with the beneficial ownership of the account as between parties....

These statutes define the liability of a bank in making payment on joint accounts and clearly preclude the imposition of liability for making payment to one of the parties. *Kuehl v. Terre Haute First Nat. Bank* (1982), Ind.App., 436 N.E.2d 1160. Thus, if Harold had personally gone to the Bank, retrieved the jointly owned CDs, redeemed them, and then redistributed the proceeds, the Bank would have had no say in the matter and could not have been held liable for any sums paid out that were inconsistent with Ardith's beneficial ownership. Because Harold had the authority to redeem the jointly held certificates of deposit then Debo-

---

1. Of course if this were an action against Harold's estate, then the authority to withdraw funds would not necessarily relieve the estate of liability. Even where both parties have authority to draw out all the money from an account "[o]ne of two joint tenants of money deposited in a joint bank account cannot, by withdrawing the money without the other's knowledge and consent, divest the other of his joint ownership therein." *Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92; *Accord Voss v. Lynd* (1992), Ind.App., 583 N.E.2d 1239 *citing Estate of Macak* (1973), 14 Ill.App.3d 261, 302 N.E.2d 436.

rah, acting on Harold's specific instructions, had the same authority. In either event, the Bank cannot be and could not have been held liable. The trial court's judgment to the contrary is clearly erroneous and must be reversed.

Judgment reversed.

KIRSCH, J., concurs.

BARTEAU, J., dissents with opinion.

BARTEAU, Judge, dissenting.

Ardith Akers and her husband, Harold Akers, leased a safety deposit box from The Parke State Bank. The contract, the details of which were specified on the bank's printed form, provided that The Parke State Bank would grant access to the safety deposit box only to Harold or Ardith, or to someone so designated in a writing that Ardith and Harold both had signed.

It is undisputed that The Parke State Bank wrongfully allowed Harold's daughter access to the safety deposit box. When Harold inquired how his daughter could access the safety deposit box, the president of the bank told Harold that the bank would allow her to access the lock box with Harold's written authorization. The bank so informed Harold, and subsequently granted his daughter access to the lock box, despite the fact that both the bank and Harold knew from the contract language that, in the absence of Ardith's consent, such access violated the lease agreement. It is uncontroverted that The Parke State Bank breached its agreement with Ardith, and the evidence reveals that the breach resulted from more than simple oversight on the part of the bank.

It is a fundamental principle of contract law that a party who suffers a breach of a valid contract is entitled to the benefit of the bargain and is awarded damages that will place her in a position equal to, but not better than, the position in which she would have been had the breach not occurred. *See Showalter, Inc. v. Smith* (1994), Ind.App., 629 N.E.2d 272; *trans. denied; Pierce v. Drees* (1993), Ind.App., 607 N.E.2d 726; *Fowler v. Campbell* (1993), Ind.App., 612 N.E.2d 596; *Captain & Co., Inc. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, *reh'g denied,*

*trans. denied.* Had The Parke State Bank not breached its agreement with Ardith, Harold's daughter would not have gained access to the safety deposit box and would not have removed the certificates of deposit. The evidence demonstrates that, had the unauthorized access been denied, the certificates of deposit would have been present in the safety deposit box at the time of Harold's death. But for the breach, Ardith now would have possession of the certificates of deposit and the funds they represent.

The clearly erroneous standard limits our review to whether the evidence supports the trial court's findings, and whether the findings support the judgment. *W & W Equip. Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, *trans. denied.* The parties do not dispute the trial court's finding that the bank breached the lease agreement. The evidence demonstrates that, as a direct consequence of the breach, Ardith was denied the certificates of deposit and the funds they represent. The evidence supports the trial court's findings and the findings support the trial court's conclusion. The judgment is not clearly erroneous, and I would therefore affirm.