**BRENNEMAN MECHANICAL & ELECTRICAL, INC., Korschot's Heating & Air Conditioning, Inc., Closson Lumber Co., Hoosier Glass Co., Inc., and General Builders of Lafayette, Inc., Defendants-Appellants,**

v.

**The FIRST NATIONAL BANK OF LOGANSPORT, Cass Investment Co., a Limited Partnership, Cass Investment, Inc., a Corporation, John E. Smith, Donald R. Smith, Independence Engineering, Inc., Jack Gillis Tile Co., Crews Roofing, Carter Concrete Block, Inc., Amco Elevators, Inc., Treasurer of Cass County, Indiana, and State of Indiana, (All defendants below, except Plaintiff The First National Bank of Logansport)—Appellee.**

No. 2–885A251.

Court of Appeals of Indiana,
Second District.

July 17, 1986.

Thomas L. Williams, William C. Burns, Schultz, Ewan, Burns & Heid, Lafayette, for defendants-appellants.

Donald J. Tribbett, Mary Ann Welsh, Logansport, for appellee.

RATLIFF, Judge, writing by designation.

## STATEMENT OF THE CASE

Brenneman Mechanical and Electrical, Incorporated, *et al.* appeal the trial court's decision granting the First National Bank of Logansport priority over various mechanics' liens by relation-back of two mortgages to prior mortgages after default by investors on loans acquired to finance a renovation project. We affirm.

## FACTS

Donald R. Smith (Donald), an accountant, with offices in the Captain Logan Hotel in Logansport, Indiana, approached John E. Smith (John), a builder and developer and one of Donald's clients, with an idea for purchasing and renovating the Captain Logan Hotel. John was sole or part owner of approximately twenty-seven (27) organizations operating under the umbrella name of "Smith Enterprises." Among these businesses were General Builders, in which John owned 85% of the stock, and Cass Investment, Inc. and Jesco Construction Corporation, both wholly owned by John. On September 1, 1979, Donald and John, together with Donald's two accounting partners, entered into an agreement to purchase and develop the hotel into an office building called Logan Square. Under this "turn-key" agreement, Jesco Construction Corporation (Jesco) would purchase and renovate the building and then transfer ownership to Cass Company (Cass Co.) (a limited partnership of Cass Investment, Inc.) in consideration of which Cass Co. would pay Jesco the "costs, expenses, overhead, and profit...." Record at 2159.

On December 18, 1979, Jesco purchased the hotel (hereinafter referred to as Logan Square) and entered into a loan agreement with the First National Bank of Logansport (FNBL) to finance the purchase and remodeling. John, as president of Jesco, executed a promissory note for the loan. The loan totalled $600,000.00, $196,742.19 disbursed immediately with the remaining $403,257.81 available for remodeling expenses. The loan was to be repaid on December 18, 1981. The loan was personally guaranteed by Donald, John, and Donald's partners. In addition, to secure the loan Jesco gave FNBL a mortgage in Logan Square which was recorded in the office of the Recorder of Cass County on December 18, 1979, and has never been released of record.

General Builders, the general contractor on the project, began renovation work on July 1, 1980, with other mechanics performing their first work or first furnishing materials subsequent to that date. By approximately August 26, 1981, General Builders had spent the entire $600,000.00 of the December 8, 1979, loan. Therefore, the Smiths requested an additional loan of $200,000.00 to continue the project.

On September 11, 1981, FNBL loaned $200,000.00 to Jesco, John signing the promissory note on behalf of Jesco. This note was due on December 18, 1981. Jesco gave FNBL a mortgage for $200,000.00 to secure the loan, which FNBL recorded in the Cass County Recorder's Office on September 14, 1981. This mortgage was never released of record. In addition, John and Donald guaranteed this loan and the 1979 loan in a Guaranty Agreement for $800,-000.00. The funds from this new loan were used to pay the contractor and subcontractors. Both the 1979 and 1981 loans became delinquent and were defaulted on.

Thereafter, John and Donald requested the outstanding obligation of $800,000.00 be renewed in the name of Cass Co., which was approved by FNBL and contained in a loan commitment letter John accepted on behalf of Cass Co. On January 15, 1982, the parties closed on Logan Square. In

executing the deed, John transferred Logan Square from Jesco to Cass Co. FNBL received both a promissory note and a mortgage, in the amount of $800,000.00, as security. These instruments were executed by John as president of Cass Investments, Inc., general partner of Cass Co. The same people guaranteed the new note. Cass Co. paid the interest on the outstanding Jesco notes. The terms of the Cass Co. note were identical to those of the Jesco notes. The loan commitment letter and agreement outlining the procedure followed and approved by John stated that the "$800,000.00 loan to Cass Investment Co. ... will serve to renew the ... Jesco Construction Corporation loans." Record at 1390. In addition, the note was classified on its face as a renewal. Record at 1384, 1711–1713. This new note was due on May 18, 1982.

On May 18, 1982, this note was renewed by a demand note payable not later than November 18, 1982. This May 18, 1982, note showed a second renewal of the $800,000.00 debt. A mortgage extension agreement was also executed on this date and subsequently recorded. Prior to the November 18, 1982, due date, the principals of Cass Co. approached FNBL requesting additional funds to finance Logan Square.

On August 11, 1982, an additional $200,000.00 credit was extended to Cass Co. and the existing $800,000.00 indebtedness was renewed and extended. The new $200,000.00 note was due November 11, 1982, while the $800,000.00 note was due on demand but not later than August 11, 1983, and contained an automatic acceleration clause if Cass Co. failed to pay any other obligation to FNBL. In addition, FNBL requested and received, pursuant to an "Escrow Agreement," a deed held in escrow pending payment of the $200,000.00 and $800,000.00 obligations. This agreement provided if Cass Co. paid the $200,000.00 obligation on or before November 11, 1982, and paid the $800,000.00 one on or before August 11, 1983, the deed would be

delivered to Cass Co., otherwise, FNBL would record the deed.

The $200,000.00 note of August 1982, was not paid nor was any portion of the principal paid at the time of trial, therefore FNBL recorded the deed. On November 17, 1982, FNBL made formal demand on Cass Co. for repayment of the total indebtedness of $1,000,000.00 plus interest by November 29, 1982, or foreclosure proceedings would ensue. Cass Co. remained in possession of the property following recording of the deed, continuing to collect rent and manage Logan Square. On January 7, 1983, Cass Co. began removing its presence from the building.

On December 9, 1982, FNBL filed a complaint to foreclose its mortgage lien requesting judgment against Cass Co. for $1,000,000.00 plus interest and costs, and requested a foreclosure sale of Logan Square. Twelve additional parties, including appellants, were named to answer as to any interest they might claim in Logan Square. All five of the appellants were made parties as a result of mechanics' liens. The various suppliers and mechanics filed counterclaims and crossclaims to foreclose their liens.

On August 1, 1983, Brenneman Mechanical and Electrical, Incorporated (Brenneman)[1] joined by Korschot's Heating and Air Conditioning, Incorporated, filed a motion for partial summary judgment. This motion alleged that FNBL owned Logan Square by reason of the deed executed by Cass Co. on August 11, 1982, which had the effect of extinguishing the mortgage, and, therefore, FNBL took the property subject to the various mechanics' liens. The trial court denied Brenneman's motion and granted partial summary judgment to FNBL on the issue of ownership, pursuant to Indiana Rules of Procedure, Trial Rule 56(B). The court found that the deed from Cass Co. to FNBL was in actuality a security instrument and FNBL therefore held only a mortgage interest in Logan Square.

FNBL moved, on September 21, 1984, for leave to amend its complaint and responses

---

1. Hereinafter "Brenneman" will be used to refer generally to all five of the present appellants.

to certain discovery in order to attempt to foreclose on the December 18, 1979, and September 11, 1981, mortgages, not previously foreclosed. On October 4, 1984, *nunc pro tunc* October 2, 1984, the trial court denied this motion.

On June 24, 1985, the trial court entered its amended findings and judgment, directing the sale of Logan Square by the Sheriff of Cass County. The judgment granted the requests of FNBL and all lienholders for foreclosure of their liens. The trial court found FNBL's mortgage lien superior to all other liens to the extent of the first $600,000.00 of the loan proceeds plus interest and attorneys' fees. The trial court further declared that FNBL was on parity with the liens of all mechanics with regard to the remaining $400,000.00 of loan proceeds plus interest and attorneys' fees and, therefore, awarded pro-rata shares, to FNBL and all the mechanics, of the remaining sale proceeds after FNBL's senior lien position was satisfied. Thereafter, five of the mechanics perfected this appeal of the partial summary judgment and final judgment. Cass Co., its principals, and the remaining mechanics' lien claimants have not joined in this appeal.

### ISSUES

Brenneman presents six issues for review which we have subsumed and rephrased into the following:

1. Whether the trial court erred in granting partial summary judgment in favor of FNBL, finding that the deed held in escrow from Cass Co. to FNBL was merely a security device and that, therefore, FNBL retained a mortgage lien which took priority over the mechanics' liens because it related back to the prior Jesco mortgages.

 a. Whether the trial court erred in finding that FNBL was not an "owner" of the real estate under Indiana Code section 32–8–3–2, such that all of its in-terest therein would be subject to mechanics' liens.

 b. Whether, in finding FNBL was not an "owner" under Indiana Code section 32–8–3–2, the trial court went beyond the matter put at issue by Brenneman's motion for partial summary judgment and, therefore, cut off mechanics' claims and defenses not at issue.

 c. Whether the trial court erred in granting partial summary judgment in favor of FNBL despite the mechanics' affirmative defenses of merger, accord and satisfaction, payment, surrender and release, estoppel and election of remedy.

 d. Whether the trial court erred in admitting evidence of the earlier mortgages, notes, and debts of Jesco thereby amounting to surprise and denying the mechanics a fair trial.

2. Whether the trial court erred in holding that the Cass Co. debts were secured by and related back to the Jesco mortgages, thereby conferring lien priority to the bank.

3. Whether the trial court erred in its determination of lien priorities.

In addition, FNBL cross-appeals on the following:

4. Whether the trial court erred in its determination of the priority of Amco Elevators, Incorporated's mechanic's lien.

5. Whether the trial court abused its discretion in denying FNBL's motion for leave to amend its complaint and answers to interrogatories.

### DISCUSSION AND DECISION

*Issue One*

■ Brenneman argues that the deed executed by Cass Co. for FNBL, which was held in escrow and later recorded, conferred ownership of Logan Square on FNBL thereby rendering their interest subordinate to the mechanics' liens.[2] It is well

---

**2.** "Extent of lien.—The entire land upon which any such building, erection or other improvement is situated, including that portion not covered therewith, shall be subject to lien to the extent of all the right, title and interest owned therein by the owner thereof, for whose immediate use or benefit such labor was done or material furnished; and where the owner has only a leasehold interest, or the land is encumbered by mortgage, the lien, so far as concerns

settled in Indiana that a deed, absolute and unconditional on its face, may be nothing more than a mortgage or security device when executed to secure an existing debt. *Hanlon v. Doherty* (1886), 109 Ind. 37, 38, 9 N.E. 782, 782–83; *Moore v. Linville* (1976), 170 Ind.App. 429, 433–34, 352 N.E.2d 846, 849; *Huffman v. Foreman* (1975), 163 Ind.App. 263, 273, 323 N.E.2d 651, 657; *McCool v. Ayres* (1963), 136 Ind. App. 72, 88, 192 N.E.2d 636, 645, *trans. denied; Silverstein v. Central Furniture Co.* (1959), 131 Ind.App. 170, 182, 162 N.E.2d 690, 695, *trans. denied.* "In such event it will be regarded and treated in equity as a mortgage, with the parties having relative rights and remedies of a mortgagor and mortgagee." *Silverstein,* at 182, 162 N.E.2d at 695.

 The question of whether a deed, absolute in form, is in fact a mortgage depends upon the parties' intentions. *Hanlon,* 109 Ind. at 43–44, 9 N.E. at 783; *Moore,* 170 Ind.App. at 434, 352 N.E.2d at 849; *McCool,* 136 Ind.App. at 88, 192 N.E.2d 645; *Silverstein,* 131 Ind.App. at 182, 162 N.E.2d at 696; *Barber v. Barber* (1946), 117 Ind.App. 156, 160, 70 N.E.2d 185, 187. This intention may be shown by written or parol evidence. *Silverstein,* 131 Ind.App. at 187, 162 N.E.2d 698; *Barber,* 117 Ind.App. at 160–161, 70 N.E.2d at 187. Moreover, the law gives effect to the intention of the parties rather than being controlled by the form or names of the instrument. *Moore,* 170 Ind.App. at 434, 352 N.E.2d at 849. Determining the parties' intent involves a case by case approach. *McCool,* 136 Ind.App. at 95–96, 192 N.E.2d at 648.

 Indiana courts have looked to various factors in ascertaining the intent to create an equitable mortgage. Among these are: the existence of a debt prior to the transaction or one created as part of the transaction (*Hanlon v. Doherty* (1886), 109 Ind. 37, 9 N.E. 782; *McCool v. Ayres* (1963), 136 Ind.App. 72, 192 N.E.2d 636;

*Silverstein v. Central Furniture Co.* (1959), 131 Ind.App. 170, 162 N.E.2d 690, *trans. denied*); documents that provide the grantor can redeem the property by performing certain conditions within a certain time (*McCool; Silverstein*); the grantee gave inadequate consideration for the conveyance of the real property (*Silverstein; Barber v. Barber* (1946), 117 Ind. App. 156, 70 N.E.2d 185); the grantor paid interest to the grantee (*McCool*); the grantor retained possession, control, and use of the property free of rent (*McCool; Barber*); the grantor improved the real estate (*Barber*); the grantee did not exercise ownership or control over the property (*Barber*); and, the parties intended to extinguish a debt (*Silverstein*). Hence, a court must consider all the surrounding circumstances, the parties' positions at the time, their conduct, declarations, and attitude, and any other facts tending to show the true nature of the transaction. The deed given by Cass Co. to FNBL and held in escrow did not convey ownership but merely served as a security device for Cass Co.'s indebtedness.

In order to constitute a conveyance, the evidence must demonstrate that the deed was intended both as a conveyance and to extinguish Cass Co.'s debt. Here, however, the evidence points to the opposite conclusion. The deed was given as part of the August 11, 1982, transaction wherein FNBL loaned Cass Co. $200,000.00 bringing its total indebtedness to $1,000,000.00. In addition, FNBL received yet another mortgage on Logan Square. At the time of this transaction, FNBL had granted Cass Co. a total of three loans, three debt renewals, and one mortgage extension and had received three mortgages. These transactions demonstrate the continued efforts of FNBL to provide Cass Co. with the funds it desired for its development of Logan Square. Moreover, the deed was given in conjunction with this final loan. In addition, the "Escrow Agreement" provided

---

the buildings erected by said lienholder, is not impaired by forfeiture of the lease for rent or foreclosure of mortgage; but the same may be

sold to satisfy the lien and be removed within ninety [90] days after the sale by the purchaser." Indiana Code section 32–8–3–2 (Burns 1980).

that if the $800,000.00 and $200,000.00 obligations were paid on their respective due dates the deed would be re-delivered to Cass Co.

The surrounding circumstances of the transaction further support the trial court's determination that the deed did not convey ownership. The deed was executed as security for a new loan and Cass Co.'s pre-existing indebtedness. Cass Co., as grantor, was paying interest to FNBL, the grantee, and could redeem Logan Square if it complied with the Escrow Agreement. Cass Co. continued to retain control and possession of the property and make improvements thereon. Moreover, there is no evidence that the parties intended the deed to extinguish Cass Co.'s debt. This does not evidence an intention to convey Logan Square but, on the contrary, demonstrates that the deed was merely another device to secure Cass Co.'s increasing indebtedness.

■ Summary judgment is properly granted in cases where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Kidd v. Davis* (1985), Ind.App., 485 N.E.2d 156, 158; *Nahmias v. Trustees of Indiana University* (1983), Ind.App., 444 N.E.2d 1204, 1206, *trans. denied; English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 307, *trans. denied.* In considering a motion for summary judgment the trial court may consider any evidence that may be properly admitted during the trial. *Moll v. South Central Solar Systems* (1981), Ind.App., 419 N.E.2d 154. To determine if a genuine issue of material fact exists all materials on file are construed liberally in favor of the nonmoving party and all doubts are resolved against the moving party. *Moll.* In addition, a party has the burden of asserting his affirmative defenses in a summary judgment proceeding. *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221; *Associates Financial Services Co. of Kentucky v. Knapp* (1981), Ind. App., 422 N.E.2d 1261. On appeal, we employ the same standard of review utilized by the trial court in examining its granting of summary judgment. *Wingen-*

*roth v. American States Insurance Co.* (1983), Ind.App., 455 N.E.2d 968, 969.

■ Brenneman argues, under issues 1b and 1c as rephrased, that the trial court went beyond the matter put at issue in its motion for partial summary judgment and thereby precluded Brenneman from presenting its affirmative defenses. Brenneman asserted that the deed conferred ownership of Logan Square on FNBL thereby rendering their interest subordinate to the various mechanics' liens. In order to determine whether the deed conveyed ownership or merely served as a security device, the trial court had to address the question whether the deed was intended as payment to extinguish Cass Co.'s debt. *See State, Dept. of Admin., Per. Div. v. Sightes* (1981), Ind.App., 416 N.E.2d 445, 450, *trans. denied.* Accordingly, the trial court was required to assess the very affirmative defenses Brenneman argues it was precluded from presenting. Brenneman raised the issue of FNBL's interest in Logan Square in the hopes of having that interest declared to be subject to their mechanics' liens. The trial court determined FNBL's interest as required by Brenneman's motion. Therefore, the trial court did not err and exceed the scope of Brenneman's motion for partial summary judgment but looked at the evidence necessary to decide the issue of ownership.

■ Brenneman further argues that the trial court erred in admitting evidence of the earlier debts, notes, and mortgages of Jesco as this amounted to surprise and denied Brenneman a fair trial. Admissibility of evidence is within the sound discretion of the trial court. *English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 309, *trans. denied.* This court will reverse a trial court for abuse of that discretion only when the trial court's action is clearly erroneous and against the facts and circumstances before the trial court or reasonable inferences to be drawn therefrom. *Estate of Ballard v. Ballard* (1982), Ind.App., 434 N.E.2d 136, 139–40; *English,* at 309.

Part of Brenneman's argument rests on the assertion that FNBL sought to foreclose only on the 1982 Cass Co. mortgages and so any evidence regarding the earlier mortgages was improper because the earlier mortgages were not attached to the complaint.[3] As we recently noted in *Bank of New York and Dreyfus Liquid Assets, Inc. v. Bright* (1986), Ind.App., 494 N.E.2d 970, 975, a trial court is not required to order compliance with Trial Rule 9.2(A). On the contrary, Trial Rule 9.2(F) affords the trial court broad discretion in ordering compliance or permitting an action to proceed without amendment of the pleadings. The trial court, therefore, did not err in admitting evidence of the Jesco mortgages despite their absence from the pleadings.

Moreover, Brenneman's argument that evidence of the Jesco mortgages was irrelevant and led to surprise is meritless. Evidence regarding the Jesco mortgages was instrumental in aiding the trial court in its resolution of the ownership issue. In addition, every transaction in this case was built upon the initial Jesco debts. It is, therefore, difficult to imagine how Brenneman could be surprised by the introduction of evidence of these prior mortgages. Again, there is no prejudice and the trial court did not err in admitting this evidence.

*Issue Two*

Brenneman also argues the trial court erred in holding that the Cass Co. debts were secured by and related back to the Jesco mortgages, thereby conferring lien priority to the bank. As a general rule the taking of a new note and mortgage by a mortgagee from a mortgagor, for the same debt, upon the same land, will not discharge the lien of the first mortgage unless the parties so intended. *Byrum v. Wise* (1940), 216 Ind. 678, 687, 24 N.E.2d 1006, 1009; *Farmers and First National Bank of Newcastle v. Citizens State Bank of Newcastle* (1937), 211 Ind. 389, 392, 5 N.E.2d 506, 508; *Bowlus v. The Phenix Insurance Co.* (1892), 133 Ind. 106, 114, 32 N.E. 319, 322; *Hanlon v. Doherty* (1886),

109 Ind. 37, 43–44, 9 N.E. 782, 783; *Pouder v. Ritzinger* (1885), 102 Ind. 571, 575, 1 N.E. 44, 46; *Walters v. Walters* (1881), 73 Ind. 425, 427–28; *Marialke v. Conservative Life Insurance Co. of America* (1938), 105 Ind.App. 554, 557–58, 12 N.E.2d 983, 984. Instead, where the release of an old mortgage and the execution of a new one appear to be part of one transaction, and the new mortgage is taken and recorded simultaneously with the release of the old mortgage, the recording of the new and the cancellation of the old mortgage constitute a contemporaneous act. *Farmers*, 211 Ind. at 392, 5 N.E.2d at 508; *Bowlus*, 133 Ind. at 114, 32 N.E. at 322; *Marialke*, 105 Ind. App. at 557, 12 N.E.2d at 984. Under such circumstances, equity keeps the lien of the first mortgage alive for the benefit of the mortgagee. *Byrum*, 216 Ind. at 686, 24 N.E.2d at 1009; *Farmers*, 211 Ind. at 392, 5 N.E.2d at 508; *Bowlus*, 133 Ind. at 114, 32 N.E. at 322; *Hanlon*, 109 Ind. at 44, 9 N.E. at 783; *Pouder*, 102 Ind. at 575, 1 N.E. at 46; *Walters*, at 428; *Marialke*, 105 Ind.App. at 557, 12 N.E.2d at 984. In such cases, equity looks to the debt and not to the form it may assume. *Farmers*, 211 Ind. at 392, 5 N.E.2d at 508; *Silverstein*, 131 Ind.App. at 190, 162 N.E.2d at 701.

In the present case, the debts of Cass Co. were secured by and related back to the original Jesco mortgages. On January 15, 1982, title to Logan Square was formally transferred from Jesco to Cass Co. In addition, Jesco's $800,000.00 indebtedness was renewed in Cass Co.'s name and Cass Co. executed an $800,000.00 mortgage to FNBL to secure this debt. Cass Co. argues that the fact the Jesco notes were marked "paid" demonstrates that the new mortgage secured a new debt. We do not find this argument convincing and it merely asks us to elevate form over substance. The transactions of January 15, 1982, do not evidence the intention of the parties to extinguish the earlier debt, but instead demonstrate the renewal of the debt under a new name. The substitution

---

**3.** See Indiana Rules of Procedure, Trial Rule 9.2(A) and (F).

of new evidences of a pre-existing debt is not the creation of a new indebtedness. Therefore, the trial court did not err in conferring lien priority on FNBL by holding that the Cass Co. indebtedness related back to the Jesco mortgages.

*Issue Three*

Brenneman further argues that the trial court erred in its determination of lien priorities, this argument being based on Brenneman's assertion that the Jesco mortgages have no legal effect. Generally, mechanics' liens relate back in time to when materials or labor are initially furnished for construction and have priority over all liens subsequently created.[4] However, an exception to this general rule of priority was declared in *Ward v. Yarnelle* (1910), 173 Ind. 535, 91 N.E. 7. In *Ward*, our Supreme Court, taking notice of resulting inequities, held a real estate mortgage executed while a building was in the process of construction was entitled to equal priority with the claims of laborers and materialmen who, without prior obligation, furnished labor and materials after execution of the mortgage and with full knowledge of its purpose and effect. *See Huntingburg Production Credit Association v. Griese* (1983), Ind.App., 456 N.E.2d 448, 452; *see also McLaughlin Mill Supply Co. v. Laundry Service, Inc.* (1933), 95 Ind. App. 693, 704, 184 N.E. 429, 433. Most important was the fact the mechanics' lien claimants furnished materials and labor with notice of the construction mortgage and its purpose. In *McLaughlin Mill Supply Co. v. Laundry Service, Inc.* (1933), 95 Ind.App. 693, 184 N.E. 429, a case following the rationale of *Ward*, the court stated:

"While the mortgage in the case now before us does not disclose the purpose of the loan the evidence does disclose its purpose, and that the money loaned was used in payment for labor, equipment and material furnished for the construction of said building. It further discloses that at least part of the appellants, and other parties asserting mechanic liens, but not appealing, had notice of the purpose of the loan obtained and of the expenditure of the money secured in discharge of debts incurred in the erection of the building."

*McLaughlin*, 95 Ind.App. at 704, 184 N.E. at 433. Hence, where mechanics' lien claimants have notice of a mortgage wherein the money derived from the loan is used in the construction of the improvements the mortgage lien and mechanics' liens have equal priority. *Ward*, 173 Ind. at 547, 91 N.E. at 13; *McLaughlin*, 95 Ind.App. at 704, 184 N.E. at 433.

Brenneman attempts to argue that under *Beneficial Finance Co. v. Wegmiller Bender Lumber Co.* (1980), Ind.App., 402 N.E.2d 41, a case wherein a finance company's mortgage lien was found subordinate to mechanics' liens, mortgage liens no longer have parity with mechanics' liens. However, Brenneman misinterprets *Beneficial* wherein the mortgage was not executed and recorded until after the mechanics had stopped furnishing materials. This court found that under these circumstances the mechanics could not be charged with notice of the resulting equities as were the mechanics' lien claimants in *Ward*. *Beneficial*, at 47–48.

In the case at bar, the mechanics had prior or contemporaneous knowledge of the September 1981 and August 1982 loans, which were used to pay the general contractor and subcontractors. John Smith testified that shortly after the 1979 loan was issued and before renovation began he advised the subcontractors of the loan from FNBL and its intended use as a means of paying them. Record at 1512–1513. John further testified, as did others, that it was

---

4. "Recording—Priorities.—The recorder shall record the notice, when presented, in the miscellaneous record book, for which he shall receive twenty-five cents [25¢]; and all liens so created shall relate to the time when the mechanic or other person began to perform the labor or furnish the materials or machinery, and shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority."
Indiana Code section 32–8–3–5 (Burns 1980).

a general policy to inform subcontractors where the project's funds were coming from. Record at 1515–1516. In addition, John indicated that it was a general practice for subcontractors to inquire as to the origin of the funds when purchase money orders were issued to them. Record at 1515–1516. The record indicates that various meetings took place in 1981 and 1982 between John, or another partner, and the subcontractors at which they were informed of the financing and transfer arrangements of the Logan Square project. Record at 1448–49, 2076–77, 2100, 2101, 2119. Brenneman, Hoosier Glass, Gillis Tile, and Crews Roofing were specifically mentioned as being present at these meetings, and there was some evidence the other mechanics' lien claimants were in attendance. Record at 1448, 2076, 2119. In addition, the mechanics continued to furnish materials after learning of FNBL's loans. There was, therefore, evidence from which the trial court could find the mechanics' lien claimants had notice of FNBL's mortgage lien. Consequently, the trial court did not err in holding that FNBL and Brenneman were on parity with regard to the remaining $400,000.00.

*Issue Four*

■ FNBL argues that the trial court erred in including Amco Elevators, Incorporated's (Amco) mechanics' lien in parity with the other lienholders with regard to the remaining $400,000.00 of loan proceeds. Amco recorded its notice of intention to hold a mechanics' lien on December 23, 1981. However, Amco took no action to foreclose its lien until January 20, 1983, when it filed a crossclaim against the other defendants. On March 8, 1983, Amco filed its counterclaim to foreclose its lien against FNBL. FNBL argues, at trial, that Amco's lien should be subordinated to all other liens due to Amco's failure to foreclose its lien within one year from the date of recording.[5]

However, as the trial court found, Trial Rule 13(J) removes the statute of limitations one year bar to Amco's lien. Trial Rule 13(J) states:

"The statute of limitations, nonclaim statute or other discharge at law shall not bar a claim asserted as a counterclaim to the extent that:

(1) it diminishes or defeats the opposing party's claim if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim, or if it could have been asserted as a counterclaim to the opposing party's claim before it (the counter-claim) was barred; or

(2) it or the opposing party's claim relates to payment of or security for the other."

Indiana Rules of Procedure, Trial Rule 13(J). As the trial court correctly noted Amco's counterclaim against FNBL was a claim of priority that resulted in diminishing FNBL's claim. As such, Amco's counterclaim came within the protection of Rule 13(J). *See generally* W. Harvey, 2 Indiana Practice, 14–15 (1970). FNBL's reliance on *Mitchels Plumbing & Heating Co. v. Whitcomb & Keller Mortgage Co.* (1972), 154 Ind.App. 63, 289 N.E.2d 138, is misplaced. In *Mitchels,* a mechanics' lien was subordinated to a mortgage lien after the one year statute of limitations ran. While the me-

---

5. Indiana Code section 32–8–3–6 (Burns 1980) provides:

"Any person having such lien may enforce the same by filing his complaint in the circuit or superior court of the county where the real estate or property on which the lien is so taken is situated, at any time within one [1] year from the time when said notice has been received for record by the recorder of the county; or, if a credit be given, from the expiration of the credit, and if said lien shall not be enforced within the time prescribed by this section, the same shall be null and void: Provided, That no credit shall be valid to extend the time for filing suit hereunder unless the terms thereof are in writing executed by the lienholder and by all owners of record, and recorded in the same manner as the original notice of lien and within one [1] year from the date the notice of lien was originally received for record. If said lien be foreclosed as herein provided, the court rendering judgment shall order the sale to be made, and the officers making the sale shall sell the property, without relief whatever from valuation or appraisement laws."

chanics' lien claimant had filed for foreclosure against the property owner within the appropriate time, the claimant had failed to include the mortgagee of record as a defendant and was therefore barred by the one year statute. The court reasoned that the failure to include a mortgagee of record must have been a conscious choice. *Mitchell* is distinguishable from the present case wherein Amco found it necessary to assert a counterclaim against FNBL in order to preserve its mechanics' lien interest. The trial court correctly applied Rule 13(J) and did not err in including Amco among the mechanics' lien claimants holding an interest in the remaining $400,000.00.

*Issue Five*

■■■ Finally, FNBL argues that the trial court erred in denying its motion for leave to amend its complaint and answers to interrogatories. Indiana Rules of Procedure, Trial Rule 15(A) provides, in pertinent part, that:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty [30] days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires."

The grant or denial of leave to amend under Trial Rule 15(A) is a matter within the sound discretion of the trial court. *Beta Alpha Shelter of Delta Tau Fraternity, Inc. v. Strain* (1983), Ind.App., 446 N.E.2d 626, 631, *trans. denied; Hoosier Plastics v. Westfield Savings & Loan Association* (1982), Ind.App., 433 N.E.2d 24, 29, *trans. denied; Selvia v. Reitmeyer* (1973), 156 Ind.App. 203, 206, 295 N.E.2d 869, 872. Thus, we will reverse the deci-

sion of the trial court only upon a manifest showing of abuse of discretion. In the present case, the trial court refused FNBL's motion after FNBL failed to comply with two earlier deadlines set by the court. Undue delay is but one factor a court may look to in determining to grant or deny leave to amend. *Beta Alpha*, at 631; *Selvia*, 156 Ind.App. at 207, 295 N.E.2d at 872. Given our deference to the trial court, we cannot say this was an abuse of discretion. Therefore, the court did not err in refusing FNBL's motion for leave to amend its complaint and answers to interrogatories.

We therefore affirm the judgment of the trial court.

BUCHANAN, C.J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent.

Whether the warranty deed from Cass Co. to FNBL was intended as a conveyance of title in satisfaction of debt or merely as a security device is a question of fact. *See Moore v. Linville* (1976) 1st Dist., 170 Ind. App. 429, 352 N.E.2d 846; *Silverstein v. Central Furniture Co.* (1959) 131 Ind.App. 170, 162 N.E.2d 690. Although the facts recited by the majority might warrant a conclusion as reached both by the trial court and by my colleagues, a reasonable trier of fact might conclude to the contrary. For this reason, I believe it was improper for the trial court to render partial summary judgment in favor of FNBL upon the issue.[1] I necessarily conclude, also, that the trial court's denial of Brenneman's motion for partial summary judgment upon the issue was proper.

I do not agree with the position of the mechanics, however, that the issue presented by Brenneman's motion was not the same determined by the partial summary judgment. When the court determined

---

**1.** Even if a trier of fact were to conclude that when the deed was executed on August 11, 1982, it was intended as a security device, it could nevertheless conclude that when the deed was

received out of escrow, accepted by FNBL and recorded, it was the equivalent of a self-help foreclosure of the security or a satisfaction or partial satisfaction of the underlying debt.

that the deed was a security device it determined that it did not convey fee simple title. The issue determined was clearly the issue presented by the motion for partial summary judgment and were it not for being a question of fact, I would hold it a proper subject for summary judgment in favor of the non-moving party as contemplated by Trial Rule 56(B).

I deem it appropriate to mention one additional area of disagreement with the majority opinion. It affirms the trial court's determination that notwithstanding failure of Amco to foreclose its lien within the one year prescribed by I.C. 32-8-3-6 (Burns Code Ed. 1980), Trial Rule 13(J) preserves it. The Rule purports to protect only counterclaims which would otherwise be barred. Trial Rule 13(J) has no relevance to Amco's claim. Amco's lien does not diminish or defeat the claim of FNBL. As FNBL argues, the issue is one of priority of claims—a matter not covered or contemplated by the rule.[2] The fact that there may not be sufficient assets to satisfy all claims is not equivalent to a diminution or defeat of a claim. Whether or not Amco's lien is given parity or priority, FNBL's claim remains undiminished and valid even though it may not be fully satisfied.

Even were I to construe Trial Rule 13(J) in the context of I.C. 32-8-3-6, I would feel compelled to indulge the rubric of construction which states that the specific provision controls over the general. The statute deals very specifically with enforcement of liens such as that of Amco. The rule deals very generally with a sweep of counterclaims unlimited as to subject matter.

For the reasons set forth, I would reverse the partial summary judgment giving Amco's lien parity with that of FNBL.

I would remand with directions to conduct further proceedings consistent with this dissent, including, but not restricted to, a trial upon the merits of the basic issue.

**2.** FNBL admits that Amco has a lien against Logan Square but argues that the lien is inferior

to all FNBL's mortgage liens. Appellee's Brief at 62.