**INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION, Appellant/Cross–Appellee,**

v.

**In re ESTATE OF Bernard A. DAUGHERTY, Deceased, Appellee/Cross–Appellant.**

**No. 49T10–0909–TA–49.**

Tax Court of Indiana.

Dec. 7, 2010.

---

Gregory F. Zoeller, Attorney General of Indiana, Kristen M. Kemp, Nancy M. Hauptman, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellant/Cross–Appellee.

Jeffrey B. Kolb, Emison Doolittle Kolb & Roellgen LLP, Vincennes, IN, Attorney for Appellee/Cross–Appellant.

FISHER, J.

The Indiana Department of State Revenue, Inheritance Tax Division (Department) appeals the Knox Circuit Court's (probate court) order determining the inheritance tax liability of the Estate of Bernard A. Daugherty (Estate). The Estate has filed a cross-appeal. These appeals present three issues for the Court's review:

I. Whether the probate court erred in denying the Estate's motion to dismiss;

II. Whether the probate court's conclusion that it lacked subject matter jurisdiction over the Estate's counterclaim was in error; and

III. Whether the probate court erred in approving twelve deductions for farming-related expenses pursuant to Indiana Code § 6–4.1–3–13.

### FACTS AND PROCEDURAL HISTORY

On December 10, 2007, Bernard A. Daugherty (Bernard) died testate. At the time of this death, Bernard owned a 462 acre farm in Knox County, Indiana. (*See* Appellant's App. Ex. E at 107, 117–24.) Bernard's will named his nephew, Curtis Daugherty (Curtis), as the sole beneficiary of the farm. (Appellant's App. Ex. E at 93.) The will also designated Curtis as the personal representative of the Estate and authorized administration without supervision. (Appellant's App. Ex. E at 93.) Accordingly, on December 12, 2007, Curtis filed a "Petition for Probate of Will, Issuance of Letters, and Leave to Administer Testate Estate Without Court Supervision" with the probate court. (Appellant's App. Ex. L.) The probate court granted the petition and issued letters of administration on the same day. (Appellant's App. Ex. I.)

The Estate subsequently filed an inheritance tax return, claiming sixty deductions for six general types of expenses: funeral expenses, personal representative expenses, farming-related expenses, pre-existing debt expenses, general administrative expenses, and expenses related to the sale of real and personal property. (*See* Appellant's App. Ex. E at 89–91.) On October 6, 2008, the probate court accepted, as filed, the Estate's inheritance tax return.

On February 3, 2009, the Department filed a petition for rehearing and redetermination (petition) with the probate court, asserting that the Estate's deductions for tiles, electrical repairs, wheat spray, pole barn repairs, grain bin repairs, and a fertilizer bill were improper. (*Cf.* Appellant's App. Ex. O ¶ 2 *with* Appellant's Ex. E at 89–90.)[1,2] On February 11, 2009, the Estate filed its response, claiming that each of the disputed deductions were both necessary and proper because Bernard had

---

1. More specifically, the Department challenged the deductions taken on Schedule F, lines 26–27, 30–36, 38–39, and 44 of the Estate's inheritance tax return; the return describes these disputed farming-related deductions as follows:

 [line 26] Industrial Supply—tile parts; [line 27] S and S Trailer Sales—tile parts; [line 30] The Everett Group—electrical work; [line 31] The Everett Group—electrical work; [line 32] Crop Production Services— wheat spray; [line 33] Niehaus Lumber— materials to fix pole barn; [line 34] Lowe's—materials to fix pole barn; [line 35] Crop Production Services—wheat spray; [line 36] Griesmers LTD—grain bin repairs; [line 38] Ridgeway Flying Service—wheat spraying; [line 39] S and S Enterprises—shed repairs; and [line 44] Crop Production Services—fertilizer bill (debt of decedent).

 (Appellant's App. Ex. E at 89–90.)

not maintained the farm during the last fifteen years of his life. (*See, e.g.,* Appellant's App. Ex. Q at 193–95.) The Estate also presented a counterclaim seeking to deduct ten additional farming-related expenses.[3]

On April 13, 2009, the probate court held a hearing on the Department's petition. At the hearing, the Department asserted that the farming-related deductions were impermissible pursuant to 45 IAC 4.1–3–11, as those expenses were neither "reasonable" nor "necessary" administrative expenses; rather, they were business expenses undertaken to maintain, improve, and operate the farm.[4] (*See* Appellant's App. Ex. C at 12–15, 30 (footnote added).) The Department also maintained that because the Estate's counterclaim was untimely filed, the probate court was divested of its subject matter jurisdiction over the claim.[5] (*See* Appellant's App. Ex. C at 15, 30–33 (footnote added).)

In response, the Estate moved to dismiss the Department's petition arguing that the Department's failure to present any independent evidence necessarily meant that it had not met its burden of proof. (*See* Appellant's App. Ex. C at 17–20.) In the alternative, the Estate claimed that its farming-related deductions were proper, given that the regulation upon which the Department relied to preclude those deductions (45 IAC 4.1–3–11) was invalid. (*See* Appellant's App. Ex. C at 20–30.) The Estate also maintained that its counterclaim should be granted as it was timely filed and the probate court could consider all relevant evidence when resolving petitions for rehearing and redetermination. (*See* Appellant's App. Ex. C at 20–21, 39–40.)

On July 6, 2009, the probate court issued an order on the Department's petition. In its order, the probate court declined to find that the Department exceeded its statutory authority in promulgating 45 IAC 4.1–3–11. (Appellant's App. Ex. B ¶ 11.) Notwithstanding, the probate court found all twelve of the farming-related deductions proper. (*See* Appellant's App. Ex. B. ¶¶ 3–13.) In so doing, the probate court explained that the unique nature of farm property allowed those expenses to be construed as expenses incurred by the personal representative in the administration of the estate and not merely as expenses incurred in the operation of a farming business. (*See* Appellant's App. Ex. B ¶ 11.) The probate court further explained that Curtis, in fulfilling his duties as personal representative, should not be made to "leave crops in the fields, to leave fields idle, or to leave improvements on the property in such a state of decline [that it] would cause him to be derelict in his duties

---

2. The Department also claimed that a portion of the personal representative's expense deductions were improper. (See Appellant's App. Ex. O ¶ 1.) Because the Department has not challenged the validity of the probate court's order as to these deductions on appeal, the Court will not address them any further. (*See* Appellant's Br. at 6–13; Appellant's Reply Br. at 1–13.)

3. These additional farming-related expenses were for tractor tires, truck repairs, a miniature circuit breaker, 2008 property taxes, lime, an electrical bill, insurance, chainsaw chains, and electrical repairs. (Appellant's App. Ex. Q at 189–90.)

4. 45 IAC 4.1–3–11, in relevant part, provides that "[e]xpenses incurred in operating a business owned by the decedent are not [deductible] expenses even though [they are] indirectly incurred to preserve the value of the business." 45 Ind. Admin. Code 4.1–3–11(d) (2007) (*see* http://www.in.gov/legislative/iac/).

5. Alternatively, the Department argued that because the counterclaim sought deductions for more farming-related expenses, those expenses were not deductible under 45 IAC 4.1–3–11. (*See* Appellant's App. Ex. C at 14–15.)

to preserve the estate." (Appellant's App. Ex. B. ¶ 11.) Nevertheless, the probate court did hold that the Estate's counterclaim was untimely pursuant to Indiana Code § 6–4.1–7–1 and, therefore, it lacked subject matter jurisdiction to determine whether deduction of the ten additional farming-related expenses was proper. (*See* Appellant's App. Ex. B ¶ 14.)

Both parties subsequently appealed to this Court. The Court heard the parties' oral arguments on March 15, 2010. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The Indiana Tax Court acts as a true appellate tribunal when reviewing an appeal of a probate court's determination concerning the amount of Indiana inheritance tax due. IND.CODE ANN. § 6–4.1–7–7 (West 2010). *See also In re Estate of Young*, 851 N.E.2d 393, 395 (Ind. Tax Ct.2006) (citation omitted). Accordingly, while the Court affords the probate court great deference in its role as the fact finder, it reviews the probate court's legal conclusions *de novo.* *Id.* (footnote omitted).

## DISCUSSION

### I. Whether the probate court erred in denying the Estate's motion to dismiss

■ According to the Estate, a lack of clarity as to which party bore the "burden

of proof" on the Department's petition caused the probate court to render an erroneous ruling in this case. (*See* Appellee's Br. at 13–17.) The Estate explains that when the "burden of proof" is placed on the proper party—i.e., the Department—it is evident that the probate court erred in denying the Estate's motion to dismiss due to the fact that the Department presented "no witnesses, no exhibits, and no evidence in support of its [p]etition[.]" [6] (*See* Appellee's Br. at 16–17 (footnote added).)

The Department's petition alleged that the Estate's farming-related deductions were improper pursuant to the plain language of 45 IAC 4.1–3–11. (Appellant's App. Ex. O ¶ 2.) In response, the Estate claimed that because the regulation was invalid, its deductions were proper. (Appellant's App. Ex. Q ¶ 2.) Thus, the issues before the probate court were purely questions of law: was the regulation valid and, if so, did it prohibit the disputed deductions. In construing 45 IAC 4.1–3–11, the probate court was to apply the same rules of construction that applied to statutes. *See First Nat'l Leasing and Fin. Corp. v. Indiana Dep't of State Revenue*, 598 N.E.2d 640, 643 (Ind. Tax Ct.1992) (citation omitted). Therefore, the regulation was presumed to be valid *until the Estate demonstrated otherwise. See Harlan Sprague Dawley, Inc. v. Indiana Dep't of*

---

6. As an aside, the general term "burden of proof" is imprecise as it may refer to the "burden of persuasion" or the "burden of production." *See Porter Mem'l Hosp. v. Malak*, 484 N.E.2d 54, 58 (Ind.Ct.App.1985), *trans. denied.* The "burden of persuasion," in its most basic sense, means "[a] party's duty to convince the fact-finder to view the facts in a way that favors that party." *See* Blacks Dictionary 223 (9th ed.). In turn, the "burden of production" is: "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rath-

er than decided against the party in a peremptory ruling[.]" *Id. See also Porter*, 484 N.E.2d at 58. While the "burden of production" may shift, the "burden of persuasion" does not. *See id.* (citation omitted). *See also Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 211 n. 6 (Ind. Tax Ct.2000) (explaining the shifting of the burdens with respect to administrative proceedings), *review denied.* Accordingly, the Estate's "burden of proof" claim appears to present an issue as to the burden of production, not the burden of persuasion.

*State Revenue,* 605 N.E.2d 1222, 1225 (Ind. Tax Ct.1992). Accordingly, the Court cannot say that the probate court erred when it found that 45 IAC 4.1–3–11 was valid and therefore denied the Estate's motion to dismiss.

## II. Whether the probate court's conclusion that it lacked subject matter jurisdiction over the Estate's counterclaim was in error

■ A party who is dissatisfied with a probate court's inheritance tax determination may challenge that determination within 120 days after the determination is made. *See* IND.CODE ANN. § 6–4.1–7–1 (West 2007). In turn, Indiana Trial Rule 13, in relevant part, provides:

> [t]he statute of limitations, a non-claim statute or other discharge at law shall not bar a claim asserted as a counterclaim to the extent that . . . it *diminishes or defeats* the opposing party's claim if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim, or if it could have been asserted as a counterclaim to the opposing party's claim before it (the counterclaim) was barred[.]

Indiana Trial Rule 13(J)(1) (emphasis added).

In its cross-appeal, the Estate maintains that because its compulsory counterclaim was timely filed, Indiana Trial Rule 13 extended the 120 day statute of limitations contained in Indiana Code § 6–4.1–7–1 for filing its own petition for rehearing/redetermination. (*See* Appellee's Br. at 17–18.) (*See also* Oral Argument Tr. at 45–48.) As a result, argues the Estate, its counterclaim should have been allowed. The Court, however, disagrees.

■ Indiana Trial Rule 13 is not a tolling rule; rather, it is a rule of procedure. *See Crivaro v. Rader,* 469 N.E.2d 1184, 1186–87 (Ind.Ct.App.1984), *trans. denied.* Consequently, the rule allows the "holder of a time-barred counterclaim . . . to avoid the operation of the statute of limitations to the extent the time-barred claim *defeats or diminishes* the plaintiff's recovery." *Id.* at 1187 (emphasis added); *accord Brenneman Mech. & Elec., Inc. v. First Nat'l Bank of Logansport,* 495 N.E.2d 233, 243–44 (Ind.Ct.App.1986), *trans. denied. See also In re Estate of Compton,* 406 N.E.2d 365, 370–72 (Ind.Ct.App.1980) (explaining that Trial Rule 13 does not confer subject matter jurisdiction where it does not exist). Here, the Estate sought *affirmative relief* with a counterclaim filed approximately 128 days after the probate court's initial determination. (*See* Appellant's App. Ex. Q.) (*See also* Appellee's Br. at 18.) As a result, the probate court did not err in concluding that the Estate's counterclaim was time-barred pursuant to Indiana Code § 6–4.1–7–1. Accordingly, the probate court properly determined that it lacked of subject matter jurisdiction to decide the propriety of the ten additional farming-related deductions.

## III. Whether the probate court erred in approving twelve deductions for farming-related expenses pursuant to Indiana Code § 6–4.1–3–13

■ It is a well-settled rule that the party seeking an inheritance tax deduction must establish that it comes within the specific statutory provision allowing the deduction. *In re Estate of Pfeiffer,* 452 N.E.2d 448, 452 (Ind.Ct.App.1983) (providing that the taxpayer must demonstrate that it qualifies for the deduction it seeks).[7]

---

7. *See also, e.g., In re Estate of Giolitti,* 26 Cal.App.3d 327, 103 Cal.Rptr. 38, 41 (1972) (providing that because inheritance tax deductions "are not necessarily the same as those paid by the estate, [ ] the taxpayer must be able to place his finger upon the precise

As it relates to this case, Indiana Code § 6–4.1–3–13 defines what items may be deducted on Schedule F of the Indiana inheritance tax return:

> [t]he following items, and no others, may be deducted from the value of property interests transferred by a resident decedent under his will[:] ... expenses incurred in administering property subject to the inheritance tax, including but not limited to reasonable attorney fees, personal representative fees, and trustee fees[.]

IND.CODE ANN. § 6–4.1–3–13(a), (b)(9) (West 2007). In 1994, the Department promulgated 45 IAC 4.1–3–11 to clarify what items were actually deductible under Indiana Code § 6–4.1–3–13. (Appellant's Reply Br. at 4.) This regulation, in relevant part, provides:

> (a) Reasonable expenses incurred in administering property subject to the inheritance tax may be deducted from the value of such property.

> (b) As used in this section, "reasonable expenses" means expenditures that are actually and necessarily incurred to effect the settlement of the estate and the transfer of property of the estate to an individual transferee or to a trustee. The term does not include expenditures for the individual benefit of a transferee such as the expense of litigation by a transferee as an individual or by claimants against the estate.

> \* \* \* \* \* \*

> (d) Expenses incurred in operating a business owned by the decedent are not reasonable expenses even though indirectly incurred to preserve the value of the business.

45 IND. ADMIN. CODE 4.1–3–11(a)–(b), (d) (2007) (*see* http://www.in.gov/legislative/iac/).

In its appeal to this Court, the Department claims that the probate court, in construing the twelve farming-related deductions as administrative expenses, erred. More specifically, the Department explains that because the probate court did not hold that 45 IAC 4.1–3–11 was invalid, the regulation controlled the outcome of this matter. (*See* Appellant's Br. at 9–12.) The Estate, on the other hand, contends that the Department's arguments are entirely misplaced because an Indiana Court of Appeals case controls the outcome of this matter, not 45 IAC 4.1–3–11. (*See* Appellee's Br. at 5–10 (*citing In re Estate of Cook*, 529 N.E.2d 853 (Ind.Ct.App.1988)).) Indeed, the Estate maintains that *Estate of Cook* both discusses and rejects all of the arguments that the Department has raised in this case. (*See* Appellee's Br. at 5–8.) Furthermore, the Estate asserts that because 45 IAC 4.1–3–11 contravenes the holding in *Estate of Cook*, the regulation is "invalid and [should not be afforded] any deference or treatment as law." (*See* Appellee's Br. at 7–10.)

Contrary to the Estate's claim, *Estate of Cook* does not control the outcome of this matter for three reasons. First, the issue in *Estate of Cook* and the issue in this case differ. Indeed, the issue in this case is whether expenses incurred to preserve, maintain, and operate a farm are deductible for inheritance tax purposes, not whether expenses arising from the discretionary sale of real property are proper inheritance tax deductions. *See Estate of Cook*, 529 N.E.2d at 854. Second, when *Estate of Cook* was decided in 1988, 45

---

provision of the statute which secures it to him") (citations omitted); *In re Estate of Langendorf*, 262 Mont. 123, 863 P.2d 434, 436 (1993) (stating it is a "general rule of taxation that an item [ ] constitute[s] a deduction only when the legislature specifically establishes the deduction") (citation omitted).

IAC 4.1–3–11 had not yet been promulgated; thus, that case does not stand for the proposition that 45 IAC 4.1–3–11 is invalid. Third, and contrary to the Estate's claim, 45 IAC 4.1–3–11 is consistent with *Estate of Cook*, as the holding in that case is incorporated in subsection (c) of the regulation.[8] *See* 45 I.A.C. 4.1–3–11(c) ("Expenses incurred in selling property are reasonable expenses only when the sale is authorized under IC 29–1–15") (footnote added).

■ "An interpretation of a statute [or regulation] by an administrative agency charged with the duty of enforcing the statute [or regulation] is entitled to great weight, unless this interpretation would be inconsistent with the statute [or regulation] itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000) (citations omitted). Here, the Department has explained that it promulgated 45 IAC 4.1–3–11 to clarify what types of administrative expenses were not within the ambit of Indiana Code § 6–4.1–3–13. *Cf. with Estate of Cook*, 529 N.E.2d at 855 (explaining that not all administrative expenses (irrespective of necessity) are deductible for purposes of the statute). The regulation has been in effect for over fifteen years; the General Assembly has not altered Indiana Code § 6–4.1–3–13 in any manner whatsoever subsequent to the regulation's enactment. Furthermore, the regulation

is consistent with *Estate of Cook*. Therefore, the Estate has not demonstrated that 45 IAC 4.1–3–11 is invalid.

Having said that, the Court now turns to the facts of the case. During the probate court hearing, the Estate explained that at the time of Bernard's death the farm was in a significant state of disrepair.[9] (*See* Appellant's App. Ex. C at 24; Ex. Q at 193 (footnote added).) As a result, Curtis "fixed" the clay drainage tiles because the existing tiles had collapsed and new tiles were needed to plant the spring crop. (*See* Appellant's App. Ex. Q at 193.) The Estate further explained that "emergency" electrical repairs were needed to obtain a safe source of electricity to the grain bins and the pole barn. (*See* Appellant's App. Ex. Q at 194.) More specifically, the Estate explained that Curtis replaced the overhead electrical wires with underground wire service because the overhead wires were attached to a rotten pole that was falling down, pulling the wires bare, and separating them from the pole. (Appellant's App. Ex. Q at 194.) (*See also* Appellant's App. Ex. C at 24–25.)

Similarly, the "emergency" repairs to the pole barn were incurred to fix a leaky roof and reinforce the support poles which were so rotten that "they were completely removed from the ground ... [leaving] space between the poles and the ground [, causing] the pole barn [to] shift [ ] in a

---

8. While the regulation's definition of reasonable expenses appears to conflict with *Estate of Cook* in that it provides that a reasonable expense is one "necessarily" incurred to settle the estate, *see* 45 I.A.C. 4.1–3–11(b), the Court finds no conflict. In adopting the holding of *Estate of Cook*, the regulation essentially vitiates the "necessity" requirement with respect to sales of property. Furthermore, this Court, as did the Court of Appeals in *Estate of Cook*, agrees that deductible expenses for purposes of Indiana's inheritance tax are generally those deemed to be necessary for the preservation and settlement of the estate.

9. For example, the Estate explained that Curtis' truck became stuck in the mud twice while attempting to reach the $500,000 worth of grain stored on the farm; thus, Curtis purchased gravel to gain access to that grain so he could sell it. (*See* Appellant's App. Ex. C at 24–25.) While the Department initially contested the propriety of this deduction, it ultimately determined that it was proper because it preserved one of the farm's assets (i.e., grain). (*See* Appellant's App. Ex. C at 36.)

slow fall." (Appellant's App. Ex. Q at 194.) (*See also* Appellant's App. Ex. C at 24–25.) The Estate also explained that the grain bin repairs were incurred to replace the augers, which were useless because they had not been consistently maintained.[10] (*See* Appellant's Ex. Q at 194 (explaining that a pulley system had to be "rigged" to get the grain out of some of the bins (footnote added)).) Lastly, the Estate maintained that Curtis's wheat spray purchases and his expenditures for a fertilizer bill were proper given the overall state of the farm. (*See* Appellant's App. Ex. Q at 194–95.)

While the probate court concluded that all twelve of these farming-related expenses were deductible, this Court finds that only nine of them are deductible. Specifically, the deductions for the clay drainage tiles, the electrical repairs, the grain bin repairs, and the pole barn repairs (i.e., line items 26–27, 30–31, 33–34, 36, and 39) were proper, as those expenditures were incurred during the course of administering the estate and were undertaken to preserve, maintain, and repair the assets of the farm. *See Trinkle v. Leeney,* 650 N.E.2d 749, 752 (Ind.Ct.App.1995) (stating that "expenses of administration [ ] generally include all the costs of *preserving* estate assets *incurred after the decedent's death* ") (emphases added) (citations omitted). *See also In re Estate of Daniels ex rel. Mercer v. Bryan,* 856 N.E.2d 763, 768 (Ind.Ct.App.2006) (stating that a personal representative has a duty to both protect and preserve the estate's assets).

 Likewise, the expenses related to the fertilizer bill (i.e., line item 44), a preexisting debt (which means it was not an expense of the estate), were deductible pursuant to Indiana Code § 6–4.1–3–13. *See* A.I.C. § 6–4.1–3–13(b)(1) (providing that "the decedent's debts which are lawful claims against his resident estate" are deductible). Curtis's expenditures for wheat spray (i.e., line items 32, 35, and 38) however, were not deductible because he incurred those expenses while operating the farming business. Indeed, at the time of Bernard's death, the crops were already harvested. *See supra* note 9. As a result, the wheat spray expenditures were most likely related to the planting of a new crop and not the preservation of the estate's assets.

It is clear that Curtis inherited a farm that had been poorly maintained for numerous years. Accordingly, in fulfilling his duties as personal representative, he repaired and replaced several items on the farm that inhibited his ability to operate it in the most reasonably efficient manner. While Curtis's actions were plainly authorized under Indiana Code § 29–1–7.5–3,[11] not all of his expenditures were deductible for purposes of Indiana's inheritance tax. Indeed, there is no *per se* correlation between the fulfillment of a personal representative's duties and the eligibility for Indiana inheritance tax deductions.[12] Ac-

---

10. Augers are used to "load and remove [ ] grain from the grain bins." (Appellant's App. Ex. Q at 194.)

11. Statutorily, Curtis could "[m]ake ordinary or extraordinary repairs or alterations in buildings or other structures[,]" continue the farming business, or "[p]erform any other act necessary or appropriate to administer the estate[.]" *See* IND.CODE ANN. § 29–1–7.5–3(a)(7), (20), (29) (West 2007).

12. The Court disagrees with the Estate's contention that the comments to Indiana Code § 29–1–14–9 authorized all of its farming-related deductions, (*see* Appellee's Br. at 8), as those comments primarily concern the order in which "claims" under the probate code should be paid. *See* IND.CODE ANN. § 29–1–14–9 (West 2007) (at Indiana Probate Code Commission's 1975 Comments, § 1409).

cordingly, while there is no indication that Curtis's wheat spray expenditures were excessive or unnecessary, they were not deductible for purposes of Indiana's inheritance tax. Consequently, the probate court's order must be reversed as to those deductions.

## CONCLUSION

For the above stated reasons, the Court AFFIRMS, in part, and REVERSES, in part, the probate court's order. The Court therefore REMANDS the case to the probate court for calculation of the proper amount of inheritance tax and interest due from the Estate, consistent with this opinion.